IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TERRACE O. JOHNSON,

    Plaintiff,

v.

MICKEY'S LINEN & TOWEL SUPPLY, INC.,

    Defendant.

Civil Action No. 12 CV 1860

Hon. Charles R. Norgle

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Pro se Plaintiff Terrace O. Johnson ("Plaintiff") sues his former employer Mickey's Linen & Towel Supply, Inc. ("Defendant") for discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. Before the Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the motion is granted.

## I. BACKGROUND

### A. Local Rule 56.1

The Court has broad discretion "to require strict compliance with its local rules governing summary judgment," and it does so here. Modrowski v. Pigatto, 712 F.3d 1166, 1169 (7th Cir. 2013) (internal quotation marks and citation omitted). Pursuant to Local Rule 56.1, a litigant opposing a motion for summary judgment must file "(1) any opposing affidavits and other materials referred to in Fed. R. Civ. P. 56(e); (2) a supporting memorandum of law; and (3) a concise response to the movant's statement." N.D. Ill. LR 56.1(b). It is well established that pro se litigants are required to comply with procedural rules. Pearle Vision, Inc. v. Romm, 541 F.3d

751, 758 (7th Cir. 2008) (citing McNeil v. United States, 508 U.S. 106, 113 (1993)). Although Defendant filed a Local Rule 56.2 notice to Plaintiff of the consequences of failing to comply with Rule 56(e) and Local Rule 56.1 in opposing the instant motion, Plaintiff has only filed what appears to be a speculative narrative titled, "Response to defendants Exhibits along with information regarding harassment." While self-serving affidavits can be used to create a material factual dispute at summary judgment, Widmar v. Sun Chemical Corp., 772 F.3d 457, 459-60 (7th Cir. 2014) (citations omitted), Plaintiff's responsive pleading does not constitute an affidavit—it was not sworn to before an officer authorized to administer an oath, such as a notary public. Nor does it constitute an unsworn declaration under 28 U.S.C. § 1746 because it was not subscribed by Plaintiff as true under penalty of perjury.[1] Because Plaintiff's submission fails to comply with Local Rule 56.1, all properly supported material facts set forth by Defendants are deemed admitted. N.D. Ill. LR 56.1(b)(3)(C); see also Parra v. Neal, 614 F.3d 635, 636 (7th Cir. 2010).

## B. Facts[2]

Defendant leases and launders tablecloths, napkins, mats, and other products for customers, primarily in the hospitality industry. Plaintiff, an African American, was hired by General Manager Christ Brown ("Brown") and started work as a Route Sales Representative on December 7, 2007. Plaintiff was responsible for dropping off clean linens and other products to the customers on his route and for picking up soiled products. Plaintiff also had customer service obligations, including coordinating delivery and pick-up times, collections, addressing

---

[1] Defendant's Notice to Pro Se Litigant Opposing Motion for Summary Judgment explains among other things that a "declaration is a signed statement by a witness. The declaration must end with the following phrase: 'I declare under penalty of perjury under the laws of the United states that the foregoing is true and correct,' and must be dated."

[2] The Court takes the undisputed facts from Defendants' Local Rule 56.1(a)(3) Statement of Material Facts and supporting evidentiary materials. Although the Court "need consider only the cited materials," it "may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

2

customer complaints, and making sales.

Plaintiff had numerous disciplinary issues during his employment with Defendant. On May 29, 2008, Plaintiff received a written warning for failing to perform one of his primary responsibilities, picking up soiled linens from a customer. The same day, Plaintiff received a written warning for driving his truck with his rear door open. On July 2, 2008, Plaintiff received a written warning for failing to follow company procedures "for turning in soil to the plant," and was advised that he must re-tie each bag picked up "to ensure that it has the proper knot so that the soil counters can be proficient in their jobs." Def. Mickey's Linen's Statement of Material Facts as to Which There is no Genuine Issue in Supp. of Mot. for Summ. J. Ex. 3. On September 8, 2008, Plaintiff received a written warning for failure to maintain proper cash handling procedures. Also on September 8, 2008, Plaintiff received a written warning for failing to provide proper customer service. On October 7, 2008, while driving a company truck, Plaintiff was issued a speeding ticket for which Plaintiff was suspended for one day.

Plaintiff was also involved in numerous vehicle accidents which occurred while he was operating a company truck—December 21, 2007, May 2, 2008, August 29, 2008, October 16, 2008, and December 12, 2008. The events leading to Plaintiff's termination culminated on December 12, 2008, when Defendant learned that while operating a company delivery truck, Plaintiff disregarded a sign that stated "no through traffic," entered into the Plaza Bank parking lot, and drove into a lane reserved for the bank's drive through customers. Id. ¶ 14. The company truck, however, was too tall to clear the roof over the drive through lane and a significant collision occurred. In the written accident report, Plaintiff confirmed that he engaged in the following "unsafe acts or conditions" that contributed to the accident: "Driving through bank parking lot to avoid traffic. Not checking to make sure truck cleared overhand [sic] before

entering." Id. ¶ 15. As a result of this collision, Defendant was responsible for $3,129.81 of repairs to the bank. Damage was also caused to Defendant's truck.

Following the December 12, 2008 accident, Brown terminated Plaintiff's employment. Plaintiff was notified of his termination in a memorandum dated December 24, 2008. Plaintiff was the only employee with an extensive disciplinary record that had also been involved in multiple accidents with a company vehicle at work. However, other employees were also terminated following vehicle accidents at work, including Plaintiff's former supervisor, Dave Potash ("Potash"), who is Caucasian.

Plaintiff initiated this employment discrimination action on March 14, 2012. While represented by counsel, Plaintiff filed a Second Amended Complaint on March 25, 2013, alleging that he was terminated because of his race and in retaliation for complaints of harassment and race discrimination. Defendant now moves for summary judgment. The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

"Summary judgment is appropriate where the pleadings, discovery, disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Hussey v. Milwaukee Cnty., 740 F.3d 1139, 1142 (7th Cir. 2014) (internal quotation marks and citation omitted); see also Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The facts are viewed in the light most favorable to the nonmoving party, and all reasonable inferences are drawn in his

favor. Matthews v. Waukesha Cnty., 759 F.3d 821, 823 (7th Cir. 2014) (citing O'Leary v. Accretive Health, Inc., 657 F.3d 625, 630 (7th Cir.2011)). But before the nonmoving party "can benefit from a favorable view of evidence, he must first actually place evidence before the courts." Montgomery v. Am. Airlines, Inc., 626 F.3d 382, 389 (7th Cir. 2010). Simply showing that there is "some metaphysical doubt as to the material facts" will not defeat a motion for summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted); see also Jones v. City of Elkhart, Ind., 737 F.3d 1107, 1113 (7th Cir. 2013) ("In submitting these evidentiary materials, Jones 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010)). Rather, the nonmoving party "must present definite, competent evidence in rebuttal." Jones, 737 F.3d at 1113 (internal quotation marks and citation omitted). "[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment." Thomas v. Christ Hosp. & Med. Ctr., 328 F.3d 890, 894 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)). "Summary judgment is appropriate if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Majors v. Gen. Elec. Co., 714 F.3d 527, 532-33 (7th Cir. 2013) (quoting Ellis v. CCA of Tenn. LLC, 650 F.3d 640, 646 (7th Cir. 2011)).

## B. Employment Discrimination and Retaliation

Plaintiff asserts claims of race discrimination and retaliation for opposing racial discrimination under both Title VII and § 1981. Title VII prohibits an employer from discharging or otherwise discriminating against "any individual with respect to his

compensation, terms, conditions, or privileges of employment" on the basis of, *inter alia*, race. 42 U.S.C. § 2000e-2(a)(1). Section 1981 prohibits race discrimination in the making and enforcing of contracts. 42 U.S.C. § 1981; Smiley v. Columbia Coll. Chi., 714 F.3d 998, 1002 (7th Cir. 2013) (citing O'Leary, 657 F.3d at 630). "Both statutes also prohibit retaliation for opposing discriminatory practices that the statutes proscribe—Title VII expressly, and section 1981 by judicial interpretation." O'Leary, 657 F.3d at 630 (internal citations omitted). The Court applies the same prima facie requirement to Plaintiff's claims brought under Title VII and § 1981. Smiley, 714 F.3d at 1002 (citing Humphries v. CBOCS West, Inc., 474 F.3d 387, 403 (7th Cir. 2007)).

### *1. Race Discrimination Claims*

There are two ways of demonstrating a prima facie case of employment discrimination: the direct method of proof and the indirect method of proof. Collins v. Am. Red Cross, 715 F.3d 994, 999 (7th Cir. 2013) (citations omitted). The direct method of proof requires Plaintiff to provide direct or circumstantial evidence of the employer's discriminatory animus. Id. (citing Naficy v. Ill. Dep't of Human Servs., 697 F.3d 504, 509 (7th Cir. 2012). The Seventh Circuit recognizes three categories of circumstantial evidence: "(1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action." Diaz v. Kraft Foods Global, Inc., 653 F.3d 582, 587 (7th Cir. 2011) (citing Darchak v. City of Chi. Bd. of Educ., 580 F.3d 622, 631 (7th Cir. 2009)); see also Morgan v. SVT, LCC, 724 F.3d 990, 995-96 (7th Cir. 2013). "The circumstantial evidence a plaintiff presents must point directly to a discriminatory reason for the employer's action and be directly

related to the employment decision." Dass v. Chi. Bd. of Educ., 675 F.3d 1060, 1071 (7th Cir. 2012) (internal quotation marks and citations omitted).

Here, Plaintiff provides no direct evidence of discrimination, i.e., an explicit admission by Defendant that its termination decision was motivated by discrimination. See Diaz, 653 F.3d at 587. Nor does he provide circumstantial evidence of discriminatory animus. Instead, without any admissible evidentiary support, Plaintiff lists numerous reasons that he believes he was the victim of race discrimination. Plaintiff's narrative contains speculative and unsubstantiated, hearsay assertions that are largely unrelated to his termination. For example, Plaintiff argues that during his initial interview with Defendant, one of the managers, Don Fischer ("Fischer"), questioned him about the status of his driver's license, which made him feel as if there was an issue with his license or that Fischer was calling him a liar. Plaintiff asserts that he later learned that Fischer questioned him about the status of his driver's license because it was in fact suspended at the time of the inquiry. Plaintiff further claims that Fischer is racist and speculates that Fischer did not tell him about the status of his driver's license because Fischer really wanted to employ a Caucasian candidate.

Furthermore, Plaintiff argues that Defendant condoned his traffic violations. Plaintiff admits that he hit the bank overhang with his company truck, and that he had previously received a speeding ticket for which he was disciplined. However, Plaintiff asserts that he was given authority by Potash, his direct supervisor, to attempt the accident-causing short cut and was otherwise assured by the fleet manager that so long as there was no vehicle damage or harm to other persons or property, the speeding ticket would not result in discipline. Plaintiff further argues that while he received several write-ups, he viewed them as harassment because he was not told how to rectify the issues to prevent them from reoccurring. Even if Plaintiff had

7

submitted admissible evidence to support these allegations, Title VII "does not protect employees from poor managers or unpleasant and unfair employers." Widmar, 772 F.3d at 462. Plaintiff's attempt to defeat summary judge based upon rumors and speculation of racial discrimination is insufficient to create an issue of material fact. Id. (citations omitted). Simply put, Plaintiff fails to show, by way of direct evidence, that Defendant's decision to terminate his employment following the December 12, 2008 accident—which caused damage to the company truck, and required $3,129.81 in repairs to the bank—was racially motivated.

Next, the indirect method requires Plaintiff to follow the burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas framework, Plaintiff must first establish a prima facie case of employment discrimination: (1) that he is a member of a protected class; (2) that he met his employer's legitimate job expectations; (3) that he suffered an adverse employment action; and (4) that similarly situated employees outside of the protected class received more favorable treatment. Collins, 715 F.3d at 999 (citing Naficy, 697 F.3d at 511). If Plaintiff establishes prima facie discrimination, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action. Id. at 999-1000 (citing Naficy, 697 F.3d at 511). If Defendant succeeds, the burden returns to Plaintiff to submit evidence showing that Defendant's stated reason is pretextual. Id. at 1000 (citing Naficy, 697 F.3d at 511-12).

Fatal to his claims, Plaintiff fails to satisfy the second and fourth elements of his prima facie case—namely, that he met his employer's legitimate job expectations or that he was treated differently from similarly situated employees. As to the second element, the evidence demonstrates that Plaintiff's job performance was undisputedly deficient, and he offers no evidence to show that his discipline leading up to his termination was pretextual. "In some

8

cases . . . the issue of meeting legitimate job expectations and the question of pretext overlap. This is particularly true when the employer asserts as the nondiscriminatory reason for termination that an employee was not meeting legitimate job expectations." Widmar, 772 F.3d at 463 (internal citations omitted). This is such a case. Defendant's stated reason for Plaintiff's discharge was his poor disciplinary record culminating in the December 12, 2008 accident. Thus, to defeat summary judgment based on pretext, Plaintiff must "demonstrate that the employer's reasons are not credible through evidence showing that the proffered reasons had no basis in fact, were insufficient to motivate discharge, or did not actually motivate his discharge." Id. at 465 (citing Silverman v. Bd. of Educ. of City of Chi., 637 F.3d 729, 738 (7th Cir. 2011).

Plaintiff argues that Caucasian employees at Defendant's company were not fired after having accidents; instead, they were given the opportunity to pay insurance deductibles in order to have the accidents stricken from their employment records. However, Plaintiff fails to identify any of these purported employees, or offer any evidence to support his bare allegation. Indeed, the record belies Plaintiff's argument—other employees were terminated following vehicle accidents at work, including Plaintiff's former supervisor, Potash, who is Caucasian. Accordingly, Plaintiff fails to meet his burden to show that Defendant used discipline as pretext for race discrimination.

With respect to the fourth element, Plaintiff fails to identify a similarly situated employee outside of the protected class that was treated more favorably. "[I]n disciplinary cases—in which a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason—a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000) (citing Byrd v. Ronayne, 61 F.3d 1026, 1032 (1st Cir.

1995)). Here, Plaintiff simply fails to identify a comparator. Because Plaintiff fails to establish his prima facie case of race discrimination, summary judgment is appropriate.

### 2. *Retaliation Claims*

Finally, Plaintiff argues that he was retaliated against for writing a letter to Fischer, notifying him that Potash had harassed Plaintiff on the basis of his race. To establish a retaliation claim, Plaintiff may proceed under either the direct or indirect method of proof. Langenbach v. Wal-Mart Stores, Inc., 761 F.3d 792, 799 (7th Cir. 2014) (citing Scruggs v. Carrier Corp., 688 F.3d 821, 826 (7th Cir. 2012)). Under the direct method, Plaintiff must show: "(1) that he engaged in activity protected by the statute; (2) that his employer took an adverse employment action against him; and (3) that there is a causal connection between the plaintiff's protected activity and the adverse employment action." Moultrie v. Penn Aluminum Int'l, LLC, 766 F.3d 747, 754 (7th Cir. 2014) (citing O'Leary, 657 F.3d at 630-31). Here, Plaintiff alleges that he wrote a letter to Fischer complaining that he was being harassed by Potash based on his race. Plaintiff, however, fails to connect this complaint to his termination—no evidence demonstrates that Plaintiff's termination was caused by his protected activity. For example, Plaintiff does not provide evidence of when the alleged letter was written, precluding a suspicious timing argument. In any event, "'[s]peculation based on suspicious timing alone . . . does not support a reasonable inference of retaliation.'" Id. at 755 (quoting Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 918 (7th Cir. 2000)) (alteration in original).

Likewise, Plaintiff fails to show retaliation under the indirect method of proof. "The indirect method of proof for retaliation mirrors that for discrimination." Id. To prove retaliation under the direct method, Plaintiff must show that he: "(1) engaged in statutorily protected activity; (2) met his employer's legitimate expectations; (3) suffered an adverse employment

10

action; and (4) was treated less favorably than similarly situated employees who did not engage in protected activity." Id. (citing Alexander v. Casino Queen, Inc., 739 F.3d 972, 983 (7th Cir. 2014)). For the same reasons discussed above, Plaintiff cannot establish a prima facie case of retaliation because he fails to show that he was meeting Defendant's legitimate expectations and he fails to identify a similarly situated comparator. Summary judgment on Plaintiff's retaliation claims is therefore appropriate.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion is granted. Summary judgment is entered in favor of Defendant and against Plaintiff.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: December 18, 2014